**UNITED STATES of America, Plaintiff,**

v.

**Helen Maxine Levi TRAVIS, Defendant.**

**Crim. No. 32380.**

United States District Court
S. D. California,
Central Division.

Oct. 30, 1963.

See also, D.C., 241 F.Supp. 472.

Thomas R. Sheridan, Asst. U. S. Atty., Chief Criminal Section, Los Angeles, Cal., for plaintiff.

Margolis & McTernan, Los Angeles, Cal., for defendant.

CRARY, District Judge.

Defendant moves for dismissal of two-count Indictment charging defendant with unlawful departure from the United States without bearing a valid passport, for the Republic of Cuba, via Mexico, in violation of Section 1185(b), Title 8, U.S.C., as more particularly set forth in the Indictment. Defendant urges (1) that there is no legislative authority for prohibiting or regulating travel to Cuba or in any way limiting travel on a geographical basis, (2) that the statute delegates legislative power contrary to Article I, Section 8, of the Constitution of the United States, and (3) that the statute is vague, contrary to the First and Fifth amendments to the Constitution and deprives the defendant of liberty without due process of law. Counsel for the parties have filed points and authorities and argued the matter at length. It is not

controverted that by proclamation No. 2914, issued December 16, 1950, President Truman proclaimed the existence of a national emergency by reason of facts therein stated. Such an emergency is a condition precedent to the President imposing "restrictions and prohibitions" on travel. (8 U.S.C. § 1185)

On January 17, 1953, after the adoption of the statute codified as 8 U.S.C. § 1185, in June, 1952, President Truman executed Proclamation No. 3004, 67 Stat. c. 31, for control of persons entering or leaving the United States in which he found, among other things, the said national emergency still existed and that the interests of the United States required restrictions and prohibitions, in addition to those otherwise provided by law. In January, 1961, the Code of Federal Regulations (22 C.F.R. 53.3b) was amended to exclude Cuba from the list of places that one might travel to without a passport.

The continued existence of the national emergency, proclaimed in December, 1950, has been observed on several occasions, the latest being President Kennedy's Executive Order No. 11037 of July 20, 1962.

██ As defendant points out, one of the conditions of Section 1185, supra, in addition to the proclaimed emergency, is that there must be a finding by the President that the interests of the United States require restrictions and prohibitions upon departure and entry of persons from and into the United States unless he has a valid passport, before the provisions of Section 1185(b) may be implemented. It appears to the court that the proclamation of a national emergency of December, 1950, satisfied the conditions of Section 1185 although said proclamation antedated the effective date of the statute (June, 1962), and that the findings of President Truman in his Proclamation No. 3004 of January, 1953, re the interests of the United States requiring restrictions and prohibitions as set forth therein met the requirements of the statute and that the restrictions on travel as imposed by the Regulations amended in 1961 to require a United States passport in order to travel to Cuba are valid unless in violation of the provisions of the Constitution.

Defendant strongly relies on the case of Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204, which holds that if a citizen's liberty to travel is to be regulated it must be pursuant to the law making functions of Congress, any delegation of the power must be subject to adequate standards, and such delegated authority will be narrowly construed (See page 129 of the Opinion, 78 S.Ct. at page 1120). However, the court observes in the Kent case, at page 129, 78 S. Ct. at page 1120:

"Thus we do not reach the question of constitutionality. We only conclude that § 1185 and § 211a do not delegate to the Secretary the kind of authority exercised here."

The court in the Kent case was dealing with beliefs, associations and ideological matters. At page 130, 78 S.Ct. at page 1120, the court observes that it would be faced with important constitutional questions were it to hold that Congress by § 1185 had given the Secretary authority to withhold passports to citizens *because of their beliefs or associations* and that the Secretary "may not employ *that standard* to restrict the citizens' right of free movement." (Emphasis ours.)

Kent v. Dulles, supra, was discussed in the recent case of Worthy v. Herter, 106 U.S.App.D.C. 153, 270 F.2d 905 (May 18, 1959), Certiorari denied Dec. 7, 1959, 361 U.S. 918, 80 S.Ct. 255, 4 L.Ed. 2d 186. At page 907 of its opinion, the court states:

"We note immediately that the point here presented in no wise resembles the matter decided by the Supreme Court in Kent v. Dulles. There the Court held that the Secretary refused passports because of the beliefs and associations of the applicants and that he had no statutory authority to refuse on such grounds."

The Worthy case involved the right of the defendant, a newspaper reporter, to

renewal of a passport without restrictions on travel to China and certain other countries with which the United States did not have diplomatic relations. Worthy refused to agree to abide by the restrictions and the renewal of the passport was refused. The court observed that the refusal rested in no part upon Worthy's personal beliefs, writings or character, going on to say, at page 907:

> "It was an application of the Secretary of State's general policy of refusing Government sanction to travel by United States citizens in certain areas of the world, presently under Communist control and deemed by him to be trouble spots."

■ Defendant herein argues that there is no legislative authority to prohibit travel to Cuba or limit travel on a geographical basis, that the statute in authorizing the Executive Department to prohibit travel to Cuba, unconstitutionally delegates legislative power. As observed by the court in the Worthy case, it appears to this court that the President has under his Constitutional powers ample authority to conduct foreign affairs and to conduct and prevent war and, incident thereto, the power to limit travel to Cuba through regulations issued by the State Department. The conducting of foreign affairs would certainly include the authority to limit travel to certain areas of the world by citizens of this country without valid passports.

■ Whether the national emergency proclaimed in 1950, which Proclamation (No. 2914) was premised, among other things, on the threat of "world conquest of Communist imperialism" and "the increasing menace of the forces of Communist aggression", has terminated, is not for judicial determination. Neither is the question of whether conditions in Cuba or other reasons involving the conducting of foreign affairs are sufficient to require the limiting of travel to that country.

Professor Commager's article re "Americans Should Have Freedom to Travel", appearing in the New York Times on October 21, 1963, cited by defendant, is thought provoking and Professor Commager eloquently and persuasively states the case for freedom of travel. However, Congress has determined, no doubt after long consideration and study of the problems involved and with access to many facts and opinions of experts in the field, to which Professor Commager did not have access, that under given circumstances it shall "be unlawful for any citizen of the United States to depart from or enter, or attempt to depart from or enter, the United States unless he bears a valid passport." (§ 1185(b), supra.)

It appears to the court that political or military conditions and questions are involved herein and, as pointed out above, we are not here concerned with the same question as confronted the court in the Kent case, supra. Neither does it appear that a narrow construction of the delegated powers precludes the instant limitation. The President delegated to the Secretary of State authority for the present limitation by the terms of Proclamation No. 3004. The limitation does not determine which Americans may receive passports but succinctly eliminates Cuba as a country which may be visited without a valid passport therefor. There are certain exceptions to the regulation which are not pertinent to the case at bar.

■ If the Constitutional authority of the President is not sufficient to authorize the limitation on travel to Cuba then the statute as set forth in § 1185, Title 8, U.S.C., clearly provides the necessary authority. What action will best promote our foreign relations is not for the courts to determine, but the President, who operates in that field through the State Department.

The Worthy case is on a civil side and denial of the renewal of a passport was involved while in the case at bar the defendant is criminally prosecuted for having traveled without a passport but the principles and questions here involved are considered and treated in the Worthy case, and the conclusions of that court

may be properly applied to the circumstances herein.

 It is true that travel to foreign countries has been and is encouraged by the President and rightfully so. To know a people is to better understand them but such travel may be limited by conditions, which in the pursuance of our foreign affairs or in preventing war are found to be prejudicial to our country's best interests, and such determinations are not subject to judicial review but are properly within the province of the duly elected representatives of the citizens of this country. Though right to travel is a part of the "liberty" of which a citizen cannot be deprived without due process of law under the Fifth Amendment, this court concludes that the limitation here involved is invoked with due process of law and the court concludes, as did the court in the Worthy case, supra, that the right to travel, like every other form of liberty, is, in its concept of an ordered society, subject to restrictions under some circumstances and for some reasons.

For the foregoing reasons the defendant's motion to dismiss is hereby denied.

See also, D.C., 241 F.Supp. 468.

